UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Corey Jawan Robinson, # 294233, | ) | C/A No. 5:12-502-JMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Cpt. T. Clark; Ms. D. Bailey, Classification; Lt. J. | ) | |
| Williams; Officer S. Mosher; Sgt. J. Aranda; | ) | REPORT AND RECOMENDATION |
| Lolita M. Lee; Sherisse D. Birch; Loretta Aiken; | ) | |
| Warden Wayne McCabe; IGC B. J. Thomas; | ) | |
| Ofc. J. Middleton; Ofc. Jeremy Johnson; | ) | |
| Nurse Luanne Mauney; Nurse J. Scott; | ) | |
| Ann Hallman; Ofc. Tabitha Ford; Ms. S. Jones; | ) | |
| Cpt.William Brightharp; Major Thierry Nettles; | ) | |
| Assoc. Warden Fred Thompson; and | ) | |
| Cpt. Ann Sheppard, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"),
filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights.
This matter is before the court on cross motions for summary judgment.  Plaintiff filed a
Motion for Summary Judgment on October 15, 2012.  ECF No. 132.  Defendants filed
oppositions to Plaintiff's summary judgment motion on November 1, 2012, and Plaintiff filed
a reply to Defendants' responses on November 7, 2012.  ECF Nos. 143, 144, 145.

On November 9, 2012, Defendant Aiken filed a Motion for Summary Judgment.
ECF No. 148.  That same day, Defendants Cpt. T. Clark; Ms. D. Bailey, Classification; Lt. J.
Williams; Officer S. Mosher; Lolita M. Lee; Sherisse D. Birch; Warden Wayne McCabe;
IGC B.J. Thomas; Ofc. J. Middleton; Ofc. Jeremy Johnson; Nurse Luanne Mauney; Nurse J.
Scott; Ann Hallman; Ofc. Tabitha Ford; Ms. S. Jones; Cpt. William Brightharp; Major

Thierry Nettles; Assoc. Warden Fred Thompson; and Cpt. Ann Sheppard (hereinafter "Lieber Defendants") filed a Motion to Dismiss, or in the alternative Motion for Summary Judgment.[1]   ECF No. 149.  As Plaintiff is proceeding pro se, the court entered a *Roseboro*[2] order on November 13, 2012 advising Plaintiff of the importance of such motions and of the need for him to file adequate responses. ECF No. 150.   Plaintiff filed an opposition to the Lieber Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, on November 16, 2012, and an opposition to Defendant Aiken's Motion for Summary Judgment on November 19, 2012.  ECF Nos. 154, 156.  This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.   Because the Motions for Summary Judgment are dispositive, a Report and Recommendation is entered for the court's review.

I.       Background

Plaintiff Corey Jawan Robinson is an inmate housed within Lieber Correctional Institution ("Lieber") during the time period relevant to his Complaint.  ECF No. 1. Plaintiff filed his initial Complaint on February 23, 2013.  *Id.*   He submitted his first Amended Complaint on April 5, 2012, and his second Amended Complaint on June 4, 2012, which the court permitted to be filed and served.   ECF Nos. 21, 46.  In his amended complaints, Plaintiff alleges constitutional and other violations against Defendants for gross negligence; malicious intent to harm; unjustified use of excessive force; conspiracy; deliberate indifference; medical indifference; violations of Fourteenth and Eighth amendment rights;

---

[1] Because the Court has considered matters outside of the pleadings, the undersigned is considering the motion as one for summary judgment.  Fed. R. Civ. P. 12(d).

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

due process violations and retaliation.  ECF Nos. 46 at 2-3; 46-1 at 7.  Specifically, Plaintiff contends that he was "intentionally and improperly classified" with a "violent and mental ill inmate Pierre Livingston" when Plaintiff was not violent or mentally ill.  ECF No. 46-1 at 8. Plaintiff contends that, from December 2010 to March 2011, he tried to "get move[d] out the cell and filed grievances to exhaust [his] administrative remedies which is an due process violation."  *Id.*  Plaintiff alleges that on April 16, 2011 he and his cellmate Livingston got into a fight and Defendants Mosher and Aranda refused to separate them which "was retaliation" in response to a lawsuit that Plaintiff "recently loss" against Defendant S. Mosher.  *Id.* at 8. Plaintiff contends that he never saw medical staff for the April 16, 2011 fight.  ECF No. 46 at 2.  Plaintiff contends that he was "placed on Crisis on April 16, 2011 supposely [sic] for saying to kill [his] roommate or saying was going to kill [his] roommate." *Id.*  at 8. Plaintiff alleges that he was placed in the restraint chair two days later because "he lied to get out the cell and told them [he] was going to kill [himself] if they did not move [him] out the cell which was excessive force to place [him] in a restraint chair for lying."  *Id.* Plaintiff contends that he was placed back in the cell with Livingston, and on April 26, 2011, he went back on Crisis Intervention because "he feared that [his] roommate was going to hurt [him] because to find out he was acting crazy because he was not receiving his medication." *Id.* at 9.  Plaintiff argues that he was "mistreated from April 26, 2011 until May 2, 2011" and then was charged "for faking suicidal ideations to keep [himself] out of trouble."  *Id.* Plaintiff complains that his grievances related to this incident were not properly processed. *Id.* Plaintiff contends that in May 2011 he was "placed improperly classified with another violent inmate Patrick Walker" and that he and Walker got into a fight on May 18, 2011 "when Walker jumped on Plaintiff for no reason" and Plaintiff was "gas with mace."  ECF

No. 46 at 4. Plaintiff alleges that he was denied medical treatment for the injuries he received in the May 18, 2011 fight and that his grievance related to this incident was not properly processed. *Id.* at 4-5. Plaintiff argues that his allegations constitute "cruel and unusual and excessive force which violated plaintiff state and federal claims 1-9 and forced him to stay on crisis twice in a row." ECF No. 46-1 at 10-11. Plaintiff requests monetary compensation in the sum of $100,000; punitive damages; expenses; costs; fees; loss of job or license; non-jury trial; supplemental jurisdiction; and injunctive relief. *Id.* at 12.

II.      Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions,

answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

III.     Analysis

Plaintiff filed this litigation pursuant to 42 U.S.C. § 1983 alleging federal and state law claims against 21 Defendants. Plaintiff moves for summary judgment on the claims in his Complaint. Defendant Aiken and the Lieber Defendants have also filed summary judgment motions arguing that they are entitled to judgment as a matter of law as to all Plaintiff's claims. Because Plaintiff's allegations vary as to the multiple Defendants, this Report discusses Plaintiff's and Defendants' motions as to each Defendant or group of Defendants as appropriate.

A.  Defendant Aiken's Motion for Summary Judgment

Plaintiff asserts claims against Defendant Aiken contending that Defendant Aiken charged him with "faking suicidal ideation to keep [himself] out of trouble." ECF No. 46 at 2. Plaintiff contends that he did not lie to Defendant Aiken and that she was "not [his] mental health counselor and she is not the one who placed him on [Crisis Intervention] and therefore if [he] lied she was not suppose to be the charging employee" on the disciplinary charge. ECF No. 148-3 at 2.

Defendant Aiken contends that she is entitled to summary judgment on this claim because Plaintiff cannot establish that she was deliberately indifferent to Plaintiff's serious medical needs.  ECF No. 148-1 at 4.  Defendant Aiken contends that Plaintiff "was treated within the standard of care for his psychiatric issues."  *Id.*  Defendant Aiken also argues she is entitled to summary judgment because Plaintiff has not suffered any damages from Defendants' actions or inactions, nor has Plaintiff offered any evidence that Defendant Aiken "deprived him of any recognized constitutional right" or was personally involved "in any way with the use of force, conspiracy, or deliberate indifference as alleged against the other defendants."  *Id.* at 7-8.

In response to Defendant Aiken's summary judgment motion, Plaintiff argues that Defendant Aiken was in violation of SCDC's policies and procedures because she failed to provide mental health treatment to his roommate Pierre Livingston.  ECF No. 147 at 1.  Plaintiff also argues that Defendant Aiken violated SCDC's policies when she placed Plaintiff on crisis intervention status and failed to remove him from crisis intervention when she determined that he lied about being suicidal.  *Id.* at 2.

Plaintiff's claims that Defendant Aiken failed to follow SCDC policies do not rise to the level of a constitutional violation. The "Constitution creates no entitlement to … any such procedure voluntarily established by the state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Allegations that Defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations.  *See Riccio v. County of Fairfax, Virginia*, 907 F.2d 1459, 1469 (4th Cir. 1990) (if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).  Plaintiff has not offered evidence that his placement in crisis intervention amounted

to a constitutional violation; the undersigned, therefore, recommends that Defendant Aiken be granted summary judgment.[3]

### B.  Lieber Defendants' Motion for Summary Judgment[4]

#### 1.  Defendants Mauney and Scott

Plaintiff contends that Defendant Mauney refused to treat him for an injury to his genitals and mouth that Plaintiff received in a fight with his cellmate P. Walker because Plaintiff was a "known masturbator." ECF No. 46-1 at 11.   Plaintiff also contends that he was injured in a fight with his cellmate Livingston on April 16, 2011 but he never saw Medical for his injuries.  ECF No. 46 at 2.  Plaintiff argues that Defendant Scott should have evaluated Plaintiff outside of his cell "after chemical munitions were used [on him on July 2, 2011] to be assessed by the nurse for vital signs and flush of eyes and it took the nurse forever to arrive."  ECF No.  154 at 14.  Plaintiff also alleges that Defendant Scott charged him with masturbating, but Plaintiff contends there is "no way [he] could be masturbating off Nurse Scott after just being gas and no light was in [his] cell."  *Id.*

Defendants contend that they are entitled so summary judgment on these allegations because Plaintiff has not shown that they were deliberately indifferent to a serious medical need.  ECF No. 149 at 6.  Defendants offer Plaintiff's medical records and the affidavits of Nurse Luanne Mauney and Nurse J. Scott in support of their arguments.  ECF No. 149-2; 149-4. Defendant Mauney attests that she assessed Plaintiff on May 18, 2011 for the use of

---

[3] To the extent Plaintiff seeks to bring a claim on his cellmate Pierre Livingston's behalf, the undersigned finds that this claim must fail.  *See Hummer v. Dalton,* 657 F.2d 621, 625-26 (4th Cir. 1981) (a prisoner cannot act as an advocate for other inmates).

[4] Defendants assert Plaintiff's failure to exhaust his administrative remedies as an additional ground to support a grant of summary judgment.  Defendants, however, did not submit sufficient documentation to support this argument.  Therefore the undersigned does not address this ground in the Report and Recommendation.

chemical munitions after Plaintiff was in an altercation with Inmate Walker.  ECF No. 149-2 at 2.  Defendant Mauney avers that "she found [Plaintiff] in no acute distress or otherwise suffering from the chemical munitions or physical injuries due to the altercation with Patrick Walker."  ECF No. 149-2 at 2.  Defendant Mauney attests that, at the request of Plaintiff, she returned to the holding cell shortly after her initial examination to check Plaintiff's lip.  *Id.* Defendant Mauney avers that during this interaction Plaintiff "pulled out his penis and began masturbating," and that she charged Plaintiff with "854 Exhibitionism."  *Id.*  Defendant Mauney attests that she did not "deny Plaintiff medical care or otherwise 'ignore' him."  *Id.*

Defendant Scott attests that she went to Plaintiff's cell on July 2, 2011 to "assess his need for medical attention" and found Plaintiff "in no acute distress" and she instructed Plaintiff to "use the water in his cell to flush the chemical munitions."  ECF No. 149-4 at 2. Defendant Scott avers that during her examination Plaintiff "pulled out his penis and began masturbating" and that she charged him with "854 Exhibitionism."  *Id.*  Defendant attests that "at no point did [she] harass, threaten or otherwise taunt inmate Robinson."  *Id.*

In order to prevail on a cause of action for deliberate indifference to medical needs, Plaintiff must show that the named defendants were deliberately indifferent to his serious medical need.  *Farmer v. Brennan*, 511 U.S. 825, at 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  Deliberate indifference to a serious medical need requires proof that each Defendant knew of and disregarded the risk posed by the Plaintiff's objectively serious medical needs.  *Farmer*, 511 U.S. at 837.  In cases involving the denial of or the delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. *Sosebee v. Murphy*, 797 F.2d 179, 183 (4th Cir. 1986).   The Fourth Circuit

defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

In response to Defendants' Motion for Summary Judgment as to this claim, Plaintiff has not proffered any facts that indicate summary judgment would be inappropriate. Plaintiff's medical records reveal that he was properly evaluated and treated for any injuries that he may have sustained on May 18 and July 2, 2011. Regarding Plaintiff's allegations concerning injuries he received on April 16, 2011, Plaintiff has not offered any evidence to support his claims that he was injured on this date and that he was denied medical treatment. Further, Plaintiff's allegation that Defendants improperly charged him with "exhibitionism" is insufficient to support a claim for medical indifference. Accordingly, the undersigned recommends that summary judgment be granted as to this claim.

### 2.   Defendants Clark and Bailey

Plaintiff alleges that Defendants Bailey and Clark intentionally and improperly classified him with a violent and mentally ill inmate Pierre Livingston, and Defendant Bailey refused to change Plaintiff's cell assignment.   ECF No. 46-1 at 8-9. Plaintiff contends that Defendants' inaction forced Plaintiff to remain in "crisis twice in a row." *Id.* at 11. Plaintiff further contends that in May 2011 he was improperly classified with a violent inmate Patrick Walker and that on May 18, 2011 Inmate Walker "jumped on Plaintiff for no reason" and Plaintiff was gassed with mace and "gentile was burning private area and

Plaintiff was bleeding from it as well as from mouth and had a loosen tooth." ECF No. 46-1 at 11.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. at 833 (citation omitted). To establish a claim for failure to protect from violence, an inmate must show: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," *id.* at 834, and (2) that the prison officials had a "sufficiently culpable state of mind." *Id.* (internal citations and quotations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (internal citations omitted). To be deliberately indifferent, a prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

Defendants contend that are entitled to summary judgment on this claim because the evidence shows that "Plaintiff was never at risk of serious harm and only came into harm, if ever, when he himself initiated altercations with his cellmates in order to get his own one man cell." ECF No. 149 at 8. Defendant Clark attests that Inmate Livingston was a "proper and correct cellmate" for Plaintiff.  ECF No. 149-6 at 2. Prison records show that Inmate Livingston was serving a sentence for armed robbery, while Plaintiff was serving a sentence for assaulting an officer while resisting arrest. ECF No. 149-6 at 4-5. Defendants Clark and Bailey attest that Plaintiff and Inmate Livingston had roomed together previously without incident. ECF Nos. 149-6 at 2; 149-7 at 2. Defendants Clark and Bailey aver that they were "not aware of any risk of harm to the Plaintiff posed by Pierre Livingston," that they had "never witnessed inmate Livingston act[ing] violent towards another inmate," and had "never witnessed inmate Livingston strike or otherwise assault or batter [Plaintiff]." *Id.*

Defendant Bailey attests that Plaintiff "constantly requests a single man cell," however, Plaintiff does not meet the requirement to be housed alone. ECF No. 149-7 at 2. Defendant Bailey avers that Inmate Walker was a proper and correct cellmate for Plaintiff. *Id.* SCDC records reflect that Walker was serving a sentence for voluntary manslaughter. ECF No. 149-7 at 6. Defendants Clark and Bailey attest that they were unaware of any risk of harm to Plaintiff "prior to him and Patrick Walker engaging in a physical altercation on the morning of May 18, 2011." ECF No. 149-6 at 2; 149-7 at 2. Defendants contend that Plaintiff "is incarcerated at Lieber Correctional Institution, a Level 3, high security prison because of the severity of his underlying crime." ECF No. 149 at 9. Defendants further argue that Plaintiff is "now housed in the Special Management Unit where most, if not all, of the inmates are serving disciplinary time just like [Plaintiff]." *Id.*; ECF No. 93-1. Defendants argue that Plaintiff has not "set forth facts or allegations that would tend to support that Captain Clark, Ms. Bailey, or any other official were aware of any risk of harm to [Plaintiff] prior to the alleged attack by inmate Walker." ECF No. 149 at 9.

Here, the record does not establish that any prison official knew of, and disregarded, an excessive risk to Plaintiff's safety. Although Plaintiff contends that his cellmate Inmate Livingston was mentally ill and was not taking his medication, Plaintiff has not offered any evidence to support this contention. In fact, there is no evidence in the record that Plaintiff was ever in a violent confrontation with Inmate Livingston, and Plaintiff's allegations to the contrary are insufficient to defeat Defendants' summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989) (finding conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion). Further, the undersigned has reviewed

the video of Plaintiff being placed in the restraint chair on April 18, 2011 and notes that there is no sign of injury or damage to Plaintiff.  *See* ECF No. 149-11 at 16.  Furthermore, when Plaintiff was placed on Crisis Intervention on April 16, 2011, Plaintiff did not inform the clinical correctional counselor ("CCC") that "he had been fighting with his roommate or that he was in fear of any sort of his cellmate."  Sherisse Birch Aff. ¶ 10, ECF No. 149-8.  With regard to Plaintiff's allegations concerning his cellmate Inmate Walker, Plaintiff has not proffered any evidence that Defendants were aware that Inmate Walker posed a threat to Plaintiff prior to the alleged assault on May 18, 2011, or that Plaintiff and Walker were housed in the same cell following the alleged assault.  *See* ECF No. 154-1 at 3.  Accordingly, the undersigned recommends that Defendants be granted summary judgment on this claim.

### 3.  Excessive Force

Defendants contend that they are entitled to summary judgment on Plaintiff's excessive force claims because Plaintiff cannot show that force was used against him "maliciously and sadistically for the very purpose of causing harm" as opposed to in a good-faith effort to maintain or restore discipline.  ECF No. 149 at 10.

a.    Defendants Mosher, Aiken, Birch, Lee, Thompson, Williams, McCabe, Brightharp, Nettles, Clark, Bailey and Sheppard.

Plaintiff contends that Defendants Mosher and Sgt. J. Aranda retaliated against him and failed to separate Plaintiff and his cellmate Pierre Livingston after witnessing a fight between Plaintiff and Livingston.   ECF No. 46-1 at 8.  Defendants argue that assuming that Plaintiff's allegations were true, "Plaintiff has failed to state what if any injuries he suffered as a result" of the officers' inaction.  ECF No. 149 at 11.  Defendants contend that Plaintiff "later told CCC Birch that his cellmate was 'on his nerves'" and despite being seen by

numerous medical personnel over the next several days Plaintiff made no request for treatment for any injury related to an altercation with Pierre Livingston.  ECF Nos. 149-8 at 2; 149-9.

Plaintiff further alleges that Defendant Mosher placed him on Crisis Intervention in retaliation for a lawsuit Plaintiff recently lost against Defendant Mosher in which Ann Sheppard testified at trial that Defendant Mosher was disciplined in 2007 for "failure to lock a cell door of an inmate who was supposed to be deadlock in his cell and someone end up getting stab in that incident."  ECF No. 46-1 at 8.  Plaintiff also argues that he was placed in the restraint chair, on April 18, 2011, for two hours "almost for no reason, [his] back was sore, loss of blood circulation in both feet that was swollen and hard to walk on, rist [sic] and ankle bruised from cuffs, whole body ache and had headache."  ECF No. 154-1 at 3.  Plaintiff argues that Defendants Lee, Birch, Aiken, Williams, Clark, Bailey, Nettles, McCabe, Thompson, Brightharp, and Sheppard "was aware of the problem and knew [he] lied to keep [himself] out of trouble. Which [Plaintiff] told Defendant Lee, [he] just told them [he] was going to hurt [himself] and still was placed in restraint because [he] lied." *Id.* at 3-4.

Defendants argue they should be granted summary judgment on these claims and offer affidavits from Defendants Mosher, Lee, Thompson; a video of Plaintiff's placement in and removal from the restraint chair; medical records; and incident reports in support of their arguments.  Defendant Mosher attests that, on April 16, 2011, while he was conducting cell checks, Plaintiff told him he wanted to kill himself.  ECF No. 149-10 at 2.  Defendant Mosher reported Plaintiff's suicide threat to his supervisor Sgt. Aranda and to Medical.  *Id.* Defendant Mosher attests that Plaintiff was placed on Crisis Intervention by Medical and Plaintiff was "placed in a different cell, and stripped of all materials that he could utilize to

13

harm himself." ECF No. 149-10 at 2. Defendant CCC Lee attests that she evaluated Plaintiff on April 18, 2011 and found that Plaintiff "was still suicidal and intended to harm himself." ECF No. 149-9 at 2. Defendant Lee informed Defendant Associate Warden Thompson that Plaintiff "had been on Crisis Intervention since April 16, 2011 and was still threatening to harm himself." *Id.* Defendant Thompson attests that he was notified on April 18, 2011 that Plaintiff continued to threaten suicide. ECF No. 149-11 at 2. Defendant Thompson avers that "if an inmate continues to threaten to harm himself the request is made to place him into the restraint chair." *Id.* Defendant Thompson attests that he authorized the use of the restraint chair because Plaintiff "continued to threaten to harm himself" and "it was necessary to place [Plaintiff] into the restraint chair to insure his safety." *Id.* Defendants offer the video of Plaintiff's placement in and removal from the restraint chair and argue that the video shows that Plaintiff was moved without any resistance or force being utilized. ECF No. 149-11 at 16. Defendants further argue that Plaintiff was assessed upon his entry and removal from the restraint chair and Plaintiff was found to be in no distress, and in the days following the use of the restraint chair, Plaintiff did not claim to have suffered any injury as a result of being placed in the restraint chair or on Crisis Intervention. ECF No. 149-11 at 3, 4-16.

It is well settled that the "unnecessary and wanton infliction of pain" imposed "maliciously and sadistically" by prison officials "for the very purpose of causing harm" states a claim under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319-21 (1986). However, it is also recognized that a prison's internal security is "peculiarly a matter normally left to the discretion of prison administrators" and they should be given "wide-ranging deference" regarding the actions necessary "to preserve internal order and discipline

and to maintain institutional security." *Id.* at 321-22. In evaluating the use of force by prison officials, courts should consider the totality of circumstances, including such factors as the need for the application of force; the relationship between the need for force and the amount of force used; the extent of injury inflicted; the extent of threat to staff, inmates, or visitors; and any efforts to temper the use of force. *Id.* at 321. In the final analysis, an Eighth Amendment prisoner case involving the alleged excessive use of force by prison officials should not go to the jury "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Id.* at 322.

The undersigned has reviewed the evidence before the court, including the video tape of Plaintiff being placed in and removed from the restraint chair, and finds that Plaintiff has not offered sufficient evidence to create a genuine issue of fact that Defendants placed Plaintiff in the restraint chair "maliciously and sadistically for the very purpose of causing harm." Plaintiff also argues that he was improperly placed in the restraint chair on April 18, 2012 because he lied about being suicidal. Although Plaintiff readily admits that he lied about wanting to kill himself so he would be removed from his cell, there is no evidence that Defendants were aware that Plaintiff was lying when he was placed in the restraint chair. The evidence in the record shows that Plaintiff continued to voice suicidal thoughts and was placed in the restraint chair as a way to deter any self-harming behavior. It was not until May 2, 2011 that Defendant Aiken discovered that Plaintiff was being untruthful about being suicidal, and Plaintiff was charged with "Lying to an Employee." ECF No. 148-3 at 8. Plaintiff was removed from Crisis Intervention that same day. *Id.*

Plaintiff contends that his placement on Crisis Intervention constituted excessive force because he had to eat two sandwiches as a meal, he could not clean his cell, he was forced to sleep on a concrete slab without a blanket, he was forced to go without clothes, and he was not permitted to utilize "see sick call."  ECF No. 154-1 at 3.  The undersigned finds that Plaintiff admitted that on April 16, 2011 he told prison officials that he "would kill himself if they did not move" him from his cell, and that he was placed on Crisis Intervention due to these suicidal statements from April 16 to April 19, 2011.  ECF No. 154-1 at 2. Plaintiff further admits that he was again placed on Crisis Intervention from April 26, 2011 to May 2, 2011, when he again told prison officials that he wanted to kill himself because he did not want to be in the cell with his cellmate. ECF Nos. 46 at 4; 154-1 at 6.   The undersigned has reviewed the records related to Plaintiff's placement on Crisis Intervention and in the restraint chair and finds that the security measures taken by Defendants were reasonably related to a legitimate institutional need to protect Plaintiff from harming himself, and not done to inflict pain on Plaintiff.  Regarding Plaintiff's complaints about not being permitted to go to sick call, the undersigned finds that there is no evidence in the record that Plaintiff ever complained about any injury while on Crisis Intervention or that Defendants refused Plaintiff medical treatment. Based on the foregoing, the undersigned recommends that Defendants' motion for summary judgment be granted on this claim.

### b.     Defendant Johnson

Plaintiff appears to allege that on May 18, 2011 Defendant Johnson improperly used chemical munitions on him during Plaintiff's altercation with his cellmate Walker, and that Plaintiff was denied access to running water after the use of chemical munitions.  ECF No. 132 at 9.  Defendants argue they are entitled to summary judgment on this claim because the

use of force by Defendant Johnson was warranted and "cannot by any means be construed as excessive." ECF No. 149 at 14. Defendant Johnson attests that he discovered Plaintiff and Inmate Walker fighting on May 18, 2011, and despite several orders asking them to stop, Plaintiff and Walker did not comply. ECF No. 149-3 at 2. Defendant Johnson attests that he then "called the first responders" and "administered a burst of chemical munitions under the door." *Id.* Defendant Johnson contends that he "used only the force needed to restore order to the cell block." *Id.* The undersigned finds that Plaintiff's vague and unsupported allegations concerning the use of force by Defendant Johnson are insufficient to support a claim against Defendant Johnson for excessive force. Further, as noted *supra,* Plaintiff received adequate medical attention for this use of force by Nurse Mauney. Accordingly, the undersigned recommends that Defendants be granted summary judgment on this claim.

c.     Defendant Middleton

Plaintiff contends that he was gassed by Defendant Middleton for trying to "receive [his] grievance." ECF No. 154-1 at 4. Plaintiff further alleges that although Defendant Middleton said that he used force against Plaintiff because Plaintiff threatened him, his "food service flap was closed" and he therefore did not pose a physical threat to Defendant Middleton. *Id.*

Defendant Middleton moves for summary judgment on this claim and attests that on July 1, 2011, while he "escorted Ms. B.J. Thomas to inmate Robinson's cell to discuss his grievances, [he] observed Inmate Robinson masturbating in his cell." ECF No. 153-1 at 2. Defendant Middleton avers that he ordered Plaintiff to stop masturbating and Plaintiff did not comply, therefore Plaintiff "waived his ability to appeal his grievance." *Id.* Defendant Middleton attests that later that day Plaintiff was disrupting the cellblock by kicking his door,

and when Middleton ordered Plaintiff to stop, Plaintiff threatened Middleton saying "No, I'm going to f***ing kill you." ECF No. 153-1 at 2. Defendant Middleton avers that he again asked Plaintiff to stop his behavior and when Plaintiff did not comply he discharged chemical munitions to "restore order to the cell block." *Id.* Defendant Middleton attests that Nurse Scott came to assess Plaintiff and Plaintiff was allowed to use water to flush the chemical munitions and was found not to be in any acute distress. *Id.* at 3. Defendant Middleton attests that Plaintiff then "pulled out his penis in front of Nurse Scott and began masturbating." *Id.*

The evidence in the record shows that Plaintiff's allegations concerning Defendant Middleton's improper use of force are not supported by any evidence. It is therefore recommended that Defendants be granted summary judgment on this claim.

### 4.   Failure to State a Claim

Defendants contend that they are entitled to summary judgment because Plaintiff has failed to "state any valid cause of action, even under the liberal construction of pro se plaintiffs" against Defendants Thomas, Hallman, Ford, Jones, Thompson, Williams, McCabe, Brightharp, Nettles, and Sheppard. ECF No. 149 at 16.

>   a.   Defendants Thomas, Hallman, McCabe, Brightharp, Nettles, Thompson, Sheppard and Clark

Plaintiff contends that Defendants Thomas, Hallman, McCabe, Brightharp, Nettles, Thompson, Sheppard and Clark violated Plaintiff's Tenth and Fourteenth Amendment due process rights to the inmate grievance system by not processing his grievances, failing to advance his grievance to the next level, and denying him access to grievances so he could exhaust his administrative remedies on allegations concerning his cell change request, his

fight with his cell mate, the improper use of a restraint chair, and mistreatment by being forced to stay on Crisis Intervention.   ECF Nos. 46 at 4; 46-1 at 9, 11.  The undersigned finds that this claim is without merit.  Inmates do not have a constitutionally protected right to a grievance procedure within the prison system under the Due Process Clause, or any other statute. *See Adams v. Rice*, 40 F.3d at 75 (finding "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Thus, there is no constitutional right to file a grievance, nor is there a constitutional right to have a grievance timely determined within the prison system. Accordingly, the undersigned recommends that this claim be dismissed.

b.     Defendant Ford

Plaintiff argues that Defendant Ford improperly wrote up Plaintiff for masturbating when Plaintiff tried to show Ford that he injured his genital area in a fight with his cellmate. ECF No. 46-1 at 11.  Defendants contend they are entitled to summary judgment because Plaintiff has "fail[ed] to state what right Officer Ford has violated which would support any theory of liability to the Plaintiff."  ECF No. 149 at 17.  The undersigned finds that Plaintiff has failed to offer any facts to establish a viable claim against Defendant Ford and the undersigned therefore recommends that summary judgment be granted as to this claim.

c.     Defendant Jones

Plaintiff contends that Defendant Jones violated his rights by "not mailing proper form to U.S. District Court in case action 5:11-CV-003346-JMC-TER, *Robinson v. Clark et. al.*" and Plaintiff contends, as a result, that his case was dismissed without prejudice.  ECF Nos. 46 at 11; 46-1 at 11.  Defendants contend that this claim should be dismissed because

Plaintiff's allegations do not meet the standard for a denial-of-access-to-courts claim.  ECF No. 149 at 18.

The right of access to the courts is the right to bring to court a grievance that the inmate wished to present, and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 350-53 (1996).  In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).  Actual injury requires that the inmate demonstrate that his "non-frivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 354-55.

The undersigned has reviewed the docket in Civil Action No. 11-cv-03346 and finds that the order dismissing Plaintiff's case was without prejudice, and the dismissal did not count as a "strike" for the purposes of the "three strikes" provision of 28 U.S.C. § 1915(g). *See* ECF No. 21. Additionally, Plaintiff was granted leave to refile his action in the future. *Id.* It is therefore recommended that summary judgment be granted on this denial of access to courts claim because Plaintiff cannot show that his legal claim was "frustrated" or "impeded."

## 5.  Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 149 at 19.   The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that  is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

### C. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on his excessive force claim contending that Defendants used excessive force when, two days following a physical altercation between

Plaintiff and his cellmate,  they placed Plaintiff in the restraint chair for lying to get of his cell. ECF No. 132 at 3.  Plaintiff also alleges that Defendants are liable for excessive force because they

> forced plaintiff to stay in a crisis intervention cell twice in a row April 16, 2011 through April 19, 2011, than placed him back into a dangerous situation. Than April 26, 2011 through May 2, 2011 force plaintiff to stay in a crisis intervention cell so he would not get hurt again to keep himself out of trouble, depriving Plaintiff of clothing and hot food, forced plaintiff to stay in cell butt naked without blanket for four days.  Than second time was given blanket but was still butt naked and deprived hot food than forced back for the second time in a dangerous situation again with mental ill inmate with sexual assaultive behavior and ME custody level and plaintiff does not have ME custody level.

ECF No. 132 at 3.  Plaintiff further argues that Defendant Middleton's use of chemical munitions was "unjustified and excessive force" because there is no evidence in the record that Plaintiff was "convicted of any disciplinary charge for an 'assault and battery' or 'refusal to disobey a direct order.'"  *Id.* at 6.  Plaintiff also contends that Defendants are not entitled to qualified immunity "on the deprivation of clothing claims or being placed in a crisis intervention cell twice . . . and placing plaintiff in restraint chair."  *Id.* at 7.  Additionally, Plaintiff argues that Defendants are not entitled to qualified immunity on his deliberate indifference, retaliation, and conspiracy claims because Defendants owed a duty to Plaintiff to "do a background check on all inmates before classifying and housing them in a cell with another inmate."  *Id.* at 8.  Plaintiff contends that his "14th Amendment was violated by Defendants failed to follow and enforce their own policies and procedures."  *Id.*  Plaintiff further argues that there is a question of fact to be determined by the fact finder concerning his allegations about being placed in the restraint chair, being placed twice on Crisis Intervention, failure to protect Plaintiff from harm from other inmates, and unconstitutional

conditions of confinement.  *Id.* at 10-11.  Finally, Plaintiff requests that the court exercise supplemental jurisdiction over his state law claims.  *Id.* at 13.

The undersigned considered Plaintiff's summary judgment arguments when evaluating Defendants' motions for summary judgment, and having found that Defendants are entitled to summary judgment on Plaintiff's constitutional claims, the undersigned recommends that Plaintiff's Motion for Summary Judgment be denied.   The undersigned further recommends that the court decline to exercise supplemental jurisdiction over any claim for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Plaintiff's Motion for Summary Judgment, ECF No. 132, be denied, and Defendant Aiken's Motion for Summary Judgment, ECF No. 148, and the Lieber Defendants' Motion for Summary Judgment, ECF No. 149, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

April 11, 2013                                      Kaymani D. West
Florence, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**